

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 8, 1947

Hon. George X. Sheppard
Comptroller of Public Accounts
Austin, Texas          Opinion No. V-331

                              Re:  The authority of the Comp-
                                   troller of Public Accounts
                                   to direct the Tax Collec-
                                   tor of Lavaca County to
                                   pay a portion of the State's
                                   General Revenue taxes to
                                   the Lavaca County Flood
                                   Control District in ac-
                                   cordance with H. B. 361,
Dear Sir:                          47th Legislature.

          You request our opinion upon the above cap-
tioned matter.

          In Opinion O-7311 the Attorney General held
that H. B. 362, Chapter 361, Acts 47th Legislature
(1941), attempting to create the Lavaca County Flood
Control District in Lavaca County and similar districts
in Jackson, Fayette, and Colorado Counties, was void
because it was in conflict with Section 35 of Article
III of the Texas Constitution.  At its regular session
the 47th Legislature by H. B. 361, Chapter 477, attemp-
ted to grant and donate to the Lavaca County Flood Con-
trol District one-half of the State ad valorem taxes
collected in Lavaca County, for flood control and main-
tenance purposes, for a period of ten years, commencing
with September 1st following the adoption of the Act.
This Act was inoperative, as it assumed to grant and
devote a portion of the State ad valorem tax to a mun-
icipal corporation which was held by O-7311 not to exist.

          The 50th Legislature by H. B. 497, Chapter 183,
created the Lavaca County Flood Control District in La-
vaca County.  This Act became effective May 10, 1947.
We have carefully examined this Act, and it is in our
opinion a valid enactment.  We also checked this Act
with the void 1941 Act which attempted to create in the
same bill four separate flood and control districts, and

find that the 1947 Act is identical with the 1941 Act insofar as it pertains to the creation of the Lavaca County Flood Control District, except that the 1947 Act has an added section which reads as follows:

"Sec. 13. The Lavaca County Flood Control District heretofore created is in all things validated, and any and all acts heretofore performed or done by the District or in relation to the District or in connection with the District are in all things validated."

The Supreme Court of Texas in Pyote Independent School District v. Dyer, 34 S. W. (2d) 578, in passing upon legislative action in validating an independent school district theretofore created under the authority of an unconstitutional statute, spoke as follows:

"We now hold that the above act is sufficient in its terms and provisions to validate this district from its inception, together with its voted bonds and taxes. It is now the settled law of this state that the legislature has power to enact this character of curative legislation . . . . . "

The same principle of law is expressed in 37 Texas Jurisprudence, page 899 as follows:

"Curative acts have been held effective to validate the creation of districts embraced within the terms thereof even though the procedure by which such districts were formed was so irregular as to render the same void, and though the authorizing statute was unconstitutional."

Also see Anderson County Road District No. 8 v. Claud Pollard, 116 Tex. 547; Bigfoot Independent School District v. Gerard, 116 S. W. (2d) 804, affirmed in 129 S. W. (2d) 1213; Henson v. Commissioners' Court of Henderson County, 56 S. W. (2d) 240; and Marfa Independent School District v. Wood, 141 S. W. (2d) 590.

We therefore hold that the Lavaca County Flood Control District of Lavaca County is now a valid district and that said Sec. 13 of H. B. 497 validated

same from the time of its inception in the year 1941. The only remaining question is whether the grant of State ad valorem taxes as provided in said H. B. 361 of the 47th Legislature, which was inoperative by reason of the fact that the grant was to a non-existent municipal corporation, is now effective. The 50th Legislature did not in direct language validate the donation of the taxes provided for in H. B. 361. But Sec. 13 of H. B. 497, in addition to validating said flood control district validated "any and all acts heretofore performed or done by the District or in relation to the District or in connection with the District." Was said H. B. 361 an act in relation to and in connection with the District? We think so. In construing statutes the paramount rule is to discover the legislative intent. It is the intention of a law which is the law, and once truly ascertained, it should prevail even against the strict letter of the law. City of Brownwood v. Anderson, 92 S. W. (2d) 325.

In arriving at the legislative intent by the use of the phrase, "acts heretofore performed or done . . . in relation to the District or in connection with the District are in all things validated," we can look to other acts subsequently passed at the same session which relate to the same subject matter. Garrett v. Mercantile National Bank, 168 S. W. (2d) 636.

The 50th Legislature on June 4th, finally passed H. B. 27, Chapter 457, which reads, in part, as follows:

"WHEREAS, In accordance with applicable provisions of the Constitution the Legislature, in the manner, to the extent, and for the terms prescribed, in the Act applicable respectively to each, has heretofore allocated to certain counties, cities, districts, and political subdivisions (hereinafter sometimes called 'Public Agencies'), part of the ad valorem tax levied and collected by the State for General Revenue purposes, authorized under the Constitution in the maximum rate of thirty-five cents (35¢) on the One Hundred Dollars ($100) of taxable property, brief reference to the allocation for each such Public Agency being made as follows:

"(a) . . .

"(n) To Lavaca County Flood Control District, allocation of one-half (½) of such tax levied and collected on the property in Lavaca County, for a period of ten (10) years commencing September 1, 1941, as allocated by Chapter 477, Acts of the Regular Session of the Forty-seventh Legislature; and all Acts, if any, amendatory thereof or supplemental thereto;"

"   . . .

"WHEREAS, Each such Public Agency, in accordance with its respective allocation Act and applicable extensions thereof has heretofore incurred obligations, made commitments or undertaken a construction or maintenance program or has issued bonds, presently outstanding, for the payment of or the accomplishment of which such allocated taxes are pledged; and

"WHEREAS, Due to the then excellent condition of the State's General Revenue Fund, under applicable law, the levy of a State ad valorem tax for General Revenue purposes was unnecessary and was not made for the year 1946, resulting in the failure of each such Public Agency to receive any money from such source for such year; and

"WHEREAS, Unless some substituted payment is made by the State each such Public Agency, which has been heretofore selected by the State either to perform a function and duty of the State or to relieve or avert a calamity then recognized, will suffer embarrassment on its obligations; and

"WHEREAS, The State recognizing the probable adverse effect on the State itself of a failure to relieve such embarrassment to its agencies, in lieu of a present appropriation for each such Public Agency prescribed this measure of relief:

"Section 1. The term during which the allocation of taxes for each such Public Agency is effective under existing law,

including its original allocation Act and all extensions thereof, whether or not specifically named in the Preamble to this Act, is extended for two (2) additional years; but for the second year of such extension each such Public Agency shall be and is allocated only one-fourth ($\frac{1}{4}$) as much of the taxes as is allocated to it for the first year of such extension. The additional years during which such tax shall be allocated shall as to each such Public Agency be known as its 'Extension Years.' The Comptroller of Public Accounts shall make such changes in the records of his office to give effect to this Act, and shall give appropriate written instructions to all officials charged with the duty of collecting such allocated taxes and all officials having the duty of transmitting the proceeds thereof to such Public Agencies to the end that the object of this Act may be fully accomplished. Each of such Public Agencies are hereby authorized to borrow against the revenues accruing to it from such extension years, or to issue refunding bonds for any maturities of principal and interest, or both, and to pay the expense actually and necessarily spent therefor.

"Sec. 2 . . . .

"Sec. 3. The facts: That some of such Agencies have issued bonds in order to assist the State in performing its obligation to relieve the damage caused by the calamitous loss of life or property and to relieve and prevent danger from gulf storms; that the bonds of many of such Agencies are in default in payment of interest and principal or are about to go into default on succeeding maturity dates of principal and interest; that those which are not faced by immediate prospect of default will be forced to divert money required and pledged for its own local purposes to prevent default of said bonds which were issued to make possible the performance of the State's obligation; that contractual obligations of some such Agencies are presently suspended because of lack of funds thereby

threatening with destruction partially com-
pleted but integrated works; and the neces-
sity for completing, repairing and maintain-
ing the improvements before the next rain
and storm season create an emergency and an
imperative public necessity that the Consti-
tutional Rule requiring bills to be read on
three several days in each House be suspended,
and the same is hereby suspended, and that
this Act take effect and be in force from
and after its passage, and it is so enacted."

It seems clear that the legislature intended
that said H. B. 361 of the 47th Legislature become op-
erative, or it would not have extended the term of the
grant for two additional years. It is elementary that
it could not extend the term of a dormant Act, without
first reviving or validating same. This we hold it did
by the enactment of said Sec. 13 of H. B. 497.

It is therefore our opinion that you have the
authority to direct the Tax Collector of Lavaca County
to pay one-half of the State ad valorem taxes collected
in said County to the Lavaca County Flood Control Dis-
trict as provided in H. B. 361 of the 47th Legislature

## SUMMARY

H. B. 497, Chapter 183 of the 50th Leg-
islature lawfully created the Lavaca County
Flood Control District, and Sec. 13 of said
Act validated said district from the time of
its inception in 1941. It made operative
the provisions of H. B. 361, Chap. 477, 47th
Leg. granting one-half of the State ad val-
orem taxes to said district for a term of
ten years. The Comptroller has the author-
ity to instruct the Tax Collector of Lavaca
County to pay such one-half of the State ad
valorem taxes to Lavaca County Flood Con-
trol District as provided in said H. B. 361.

Hon. George H. Sheppard, Page 7, V-331

Pyote Independent School District vs.
Dyer, 34 S. W. (2d) 578; 37 Tex. Jur.,
p. 899; H. B. 27, Chap. 457, 50th Leg.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By W. V. Geppert

W. V. Geppert
Assistant

APPROVED

Price Daniel
ATTORNEY GENERAL

WVG:mrj